## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINE A. GAMBLE,            :
                               :
            Plaintiff,          :       No. 3:16-cv-01443
                               :
    v.                          :       (Nealon, J.)
                               :       (Saporito, M.J.)
NANCY BERRYHILL,[1]             :
Acting Commissioner of          :
Social Security,                :
                               :
            Defendant.          :

## *REPORT AND RECOMMENDATION*

This is an action brought under 42 U.S.C. §405(g) and §1383(c)(3), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Christine Gamble's application for Supplemental Security Income under Title XVI of the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for the preparation of the report and recommended disposition pursuant to the provisions of and 28 U.S.C. §636(b) and Rule 72(b). of the Federal Rules of Civil Procedure.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

For the reasons stated herein, we find that the ALJ's decision is supported by substantial evidence. Therefore, we recommend that the final decision denying Gamble's application for benefits be affirmed and that the request for remand for further proceedings be denied.

## I.    *Background and Procedural History*

Gamble is an adult individual born January 28, 1958. Gamble was fifty-five years old at the time of the alleged onset of disability—December 10, 2013. (Tr. 24). Gamble's age at the onset date places her in a category of a "person of advanced age" under the Commissioner's regulations whose age significantly affects a person's ability to adjust to other work. *See* 20 C.F.R. §416.968(e).

On January 2, 2014, Gamble protectively filed an application for benefits under Title XVI of the Social Security Act alleging disability as of December 10, 2013. In her application, she alleged the following impairments prevent her from engaging in any work: chronic back, hip and leg pain; back injury; chronic back pain; and depression and anxiety. (Tr. 62).

Gamble's claim was initially denied on March 19, 2014.

Thereafter, she filed a timely request for an administrative hearing. Her request was granted. Gamble appeared and testified before Administrative Law Judge ("ALJ") Michelle Wolfe on October 19, 2015. Gamble was represented by counsel, David Gerson, and a non-attorney representative, Mario Davilla. In addition, impartial vocational expert ("VE") Jody Doherty also appeared and testified during the administrative hearing.

On December 1, 2015, the ALJ denied Gamble's application for benefits in a written decision. On January 13, 2016, Gamble sought further review of her claim by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied on May 13, 2016. This makes the ALJ's December 2015 decision the final decision subject to judicial review by this Court.

Gamble filed a timely complaint on July 12, 2016. (Doc. 1). In her complaint, Gamble alleges that the final decision of the Commissioner was erroneous, unfounded, and is not supported by substantial evidence. On September 21, 2016, the Commissioner filed her answer in which she maintains that the ALJ's decision is supported by substantial evidence. (Doc. 5). This matter has been fully briefed by

the parties and is ripe for decision. (Docs. 7,8).

At the time of the administrative hearing, Gamble was fifty-seven years old and resided with her husband in Selinsgrove, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 41). Gamble completed a high school education and a one-year post-secondary program to attain an LPN certificate. (Tr. 42).

Gamble has a driver's license, but limits her driving due to muscle spasms in her back. (Tr. 42). She drives to the store to pick up her prescriptions which usually takes her about two hours because she has to stop four or five times while driving because of back pain. (Tr. 50-51).

Gamble's past work includes work as an LPN in a nursing home and as an office nurse for a doctor. (Tr. 44-46). She stopped working because she was in constant chronic pain. (Tr. 46).

Gamble stated that she usually wakes up between 7:00 a.m. and 8:00 a.m. (Tr. 48). She stated that she watches television, enjoys reading books, magazines, and reads the newspaper electronically. She does this while lying in bed or on the couch. (Tr. 48). Gamble stated that she is most comfortable lying down on a bed or sofa. (Tr. 55).

Gamble stated she does limited grocery shopping because she

cannot walk too much or bend/pick things up. (Tr. 49). She stated that her daughter comes to her home and cleans. Gamble can prepare a sandwich or heat something in the microwave. (Tr. 48).

Gamble stated that she can take care of her personal needs, but does have difficultly putting on her socks and pants. (Tr. 55).

Gamble stated that she can walk on a flat surface for a block before she would have to stop to sit down or stretch. She stated she can stand for about fifteen minutes and then she has to sit down, and can sit for twenty minutes before she would have to get up. (Tr. 49). She is unable to lift anything heavy. She stated the most she lifts is a box of cereal. (Tr. 50). She stated that she has trouble with her hand and arms. She has problems gripping things because her hands get stiff. (Tr. 55-56).

Gamble stated that she is treated for depression and anxiety with medication. She takes venlafaxine, which helps with her mood swings. (Tr. 52).

Additionally, Gamble is treated for irritable bowel syndrome (IBS) flare ups. She gets them every couple months and they last for a day or so. They are treated with medication. Also, Gamble stated that she is

treated for bladder spasms. She has to wear a pad and does not always make it to the bathroom. (Tr. 52). Gamble stated that during an eight hour day she goes to the bathroom ten to fifteen times. Sometimes, she has to change her clothes because she is unable to make it to the bathroom. She stated that the medication controls the spasms. Gamble stated it use to be much worse. (Tr. 53).

Gamble takes oxycontin and acetaminophen for the pain. She has tried fentanyl patches but they made her sick. She has also tried hydrocodone. (Tr. 54). Her medications cause dry mouth, tiredness, and at times an upset stomach. (Tr. 48).

Gamble presented to Julie Steinbacher, CRNP, of Family Practice Center on January 7, 2013, complaining of increased pain in her back, hips, and knees. She stated she felt like her hip was "bone on bone" and she felt like she was walking with a rod in her spine. She also complained of depression but was unsure if her pain was increasing her depression or her depression was increasing her pain. (Tr. 200). She complained of range of motion pain in her hips and pain across her low back radiating into her hips. Ms. Steinbacher noted that Gamble's affect was tearful. Ms. Steinbacher changed her medication from

desvenlafaxine to duloxetine to help with the depression. Alprazolam, acetaminophen, ropinirole (for restless leg syndrome), and solifenacin (for bladder spasms) were continued. (Tr. 201)

In April 2014, oxycodone was prescribed because the acetaminophen was not controlling the back and hip pain. Gamble stated that she was applying for disability. (Tr. 242-243).

By May 2014, Gamble told Ms. Steinbacher that her new insurance did not cover desvenlafaxine and that tolterodine (a bladder relaxant) was not working. (Tr. 248). Gamble continued to complain of back pain. She also complained of "clicking" and "popping" in her right shoulder. Crepitus was observed on range of motion of Gamble's right shoulder. Acetaminophen was substituted for oxycodone for acute pain. (Tr. 248-50).

In June 2014, Gamble asked Ms. Steinbacher for a referral for counseling for personal issues. Oxybutynin (a bladder relaxant), citalopram, alprazolam, acetaminophen, ropinirole and ondansetron were continued (Tr. 254-55).

When Gamble returned in September 2014 for sinusitis, she continued to complain of back pain and was taking sertraline for

depression. Ms. Steinbacher noted that Gamble was being treated by an orthopedist since July 2014. Matthew Eager, M.D., of Sun Orthopedic Selingsgrove noted that she had persistent chronic low back pain. The pain was aggravated by increased activity such as standing or walking for prolonged periods of time. She was taking at least four (sometimes up to eight) acetaminophen daily. He noted Gamble walked "with a tiny bit of a limp," diffused tenderness to palpation over the L5-S1 interspace in the midline and little bit over the sacrum, and mild trochanteric tenderness, more on right side. Gamble was unable to heel or toe walk, but had good strength with manual motor testing. X-rays taken showed mild disc collapse at L5-S1, and L-4-5. Dr. Wager suggested Gamble try physical therapy. (Tr. 268-69).

On follow-up in September 2014, Gamble had not gone to physical therapy and she continued to take significant amounts of acetaminophen. She continued to have pain that radiated to her left leg and across her back. At times, the pain was just in her hips, sometimes her back, and sometimes her neck through the entirety of her back. Sometimes, she experienced irritation to her ankle but no conscious pain into her foot. Dr. Wager noted that Gamble was in mild-to-

moderate discomfort. Straight leg raise test was mildly positive on the left causing tightness in the hamstrings. She had poor ankle dorsiflexion and extensor hallucis longus (EHL) function on the left. Dr. Wager's assessment was continued chronic low back pain at L5-S1, discectomy with left lower extremity sciatica. He emphasized the importance of physical therapy. He also suggested that Gamble try anti-inflammatories if she could tolerate them and he decreased the acetaminophen. (Tr. 270).

James E. Chlebowski, M.D., took over Gamble's care from Ms. Steinbacher in October 2014. He prescribed a fentanyl patch for her back pain. Gamble had been taking six acetaminophen daily but wanted to decrease it.

In a follow-up November 2014 appointment, Gamble told Dr. Chlebowski that the fentanyl was making her tired and nauseated. She continued to take the acetaminophen but it was not controlling her pain. Her anti-depressants were not working and she was crying all the time. Oxybutynin was not controlling her urinary urgencies. Dr. Chlebowski noted that Gamble appeared anxious and depressed. (Tr. 261-62). Sertraline was discontinued and venlafaxine was prescribed.

Oxycontin was prescribed for pain and Vesicare (solifenacin) samples were provided to Gamble because they were not covered by her insurance. (Tr. 262-63).

On December 5, 2015, Gamble requested refills for the oxycontin and acetaminophen. Her pain was the same and she needed extra acetaminophen due to the cold weather. Upon examination, she had pain on extremes of range of motion. (Tr. 264-65).

In January 2015, Gamble complained of low back pain radiating to her hips. She stated the pain was controlled by the oxycontin and acetaminophen but the cold weather made it worse. She was taking three acetaminophen, and sometimes up to five. On exam, there was mild tenderness to palpation over her lower spine and sacroiliac joints and pain on extremes of range of motion. Dr. Chlebowski increased her dose of extended-release oxycontin with the goal of decreasing her acetaminophen use. (Tr. 266-67).

In records from February 2015, Dr. Chlebowski wrote that Gamble was:

> "Doing well on her medications and was able to be functional. She is applying for disability and I would agree, as I don't think that she will ever be able to work where she is bending, lifting,

> twisting, all of that, which would flare her back; so I would support her being on disability unless they could do retraining for a completely sedentary job."

(Tr. 225).

In March 2015, Gamble stated that she was "pretty well controlled, but she was having a lot of spasms on the right side." (Tr. 224). Dr. Chlebowski prescribed cyclobenzaprine (a muscle relaxant). He noted that with her current medications she could "do simple activities of daily living at home." He noted that he did not think she was capable of full time employment but she was functional. (Tr. 224). That conclusion is reserved for the Commissioner.

On March 17, 2014, Gamble was seen by Paul Perch, Ed.D., a state agency non-examining reviewer, who opined that Gamble's affective disorder imposed mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace. He also stated that Gamble's affective disorder was a non-severe impairment He concluded that Gamble had the "ability to perform simple tasks." (Tr. 66).

Gamble was seen by Leo Potera, M.D., a state agency non-

examining reviewer on March 18, 2014, who opined that Gamble could sit for six hours and stand/walk for six hours. She could frequently carry, lift, push and pull ten pounds, and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to humidity, fumes/odors/dust/gases/poor ventilation, and hazards. (Tr. 67-68). The ALJ gave this opinion "great weight" because it was mostly consistent with the record.

## II.    Legal Standards

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of

evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim

requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate that she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The Commissioner follows a five-step sequential evaluation

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 416.910.

process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. *See* 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 416.945(a)(2).

to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

### III. Discussion

In her decision, the ALJ proceeded through each step of the five-step sequential evaluation process. At step one, the ALJ found that Gamble had not engaged in substantial gainful activity since December 10, 2013, the alleged onset date. (Tr. 26). At step two, the ALJ found that Gamble has the following severe impairments: degenerative disc disease in the lumbosacral spine and right hip and status post laminectomy 2007. (Tr. 26). At step three, the ALJ found that Gamble did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28).

Before proceeding to steps four and five of the sequential evaluation process, the ALJ assessed Gamble's RFC. In making this determination, the ALJ is required to assess the credibility of Gamble's subjective testimony on the subject of the intensity, persistence, and

limiting effects of her impairments in accordance with the mandates of 20 C.F.R. §404.1529 and Social Security Rulings 96-4p and 96-7p. The ALJ is also required to weigh the opinion evidence of record in accordance with the mandates of 20 C.F.R. §416.927 and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p.

The ALJ concluded that, during the relevant period, Gamble retained the RFC to engage in light work, as defined by 20 C.F.R. §416.967(b), except:

> she is limited to occasional balancing, stooping, crouching, crawling, kneeling, and climbing. [She] can never go on ladders, ropes, or scaffolds. [She] must avoid concentrated exposure to temperature extremes of cold/heat, humidity, wetness, fumes, odors, dusts, gases, and poor ventilation, vibrations, and hazards, including moving machinery and unprotected heights

(Tr. 29).

At the fourth step of the sequential evaluation process, the ALJ considers whether a claimant's current RFC prevents him or her from engaging in past relevant work. *See* 20 C.F.R. §416.920(a)(4)(iv); *see also* 20 C.F.R. §416.960(b)(1)(defining past relevant work). If the ALJ concludes that a claimant is able to engage in his or her past relevant

work, the claimant will be found not disabled. 20 C.F.R. §416.920(a)(4)(iv); *see also* 20 C.F.R. §416.965(a)(defining past relevant work). In determining whether a claimant can return to past relevant work, the question is not solely whether the claimant can return to his or her own particular *job*. Instead, the ALJ must also consider whether the claimant retains the functional capacity to meet the demands of his or her former *type of work*. *See* Soc. Sec. Ruling 82-61, 1982 WL 31387, at *2 ("A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers . . . if the claimant cannot perform the excessive functional demands and/or duties actually required in the former job, but can perform the functional demands and job duties generally required by employers throughout the national economy, the claimant should be found 'not disabled.'").

Social Security Ruling 82-61 provides that a claimant can return to past relevant work when he or she can perform either "the functional demands and job duties peculiar to an individual job as he or she actually performed it," or "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers

throughout the national economy." *Id.* at *1-*2. Generally, a claimant is the primary source of vocational evidence regarding the demands of his or her past relevant work as actually performed. *Id.* at *3. Supplemental or corroborative information on the requirements of the work as generally performed in the economy is often gleaned from the DOT. *Id.* However, "where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert." *Id.* at *2.

In her decision at step four, the ALJ found that while Gamble had impairments which were severe, she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 26). The VE testified that Gamble had several positions as a licensed practical nurse (LPN). Her work as an LPN in a nursing home type setting was medium exertion with an SVP 6. Her work as an office nurse was light in exertion with an SVP 7, as Gamble performed her job as an office nurse, medium in exertion. The ALJ also found that Gamble retained the ability to perform a range of light work consistent with the limitations presented in the

hypothetical question and that Gamble could perform her past relevant work as an office nurse, and therefore she was not disabled.

**A. The ALJ properly determined Gamble's residual functional capacity.**

One of the principal contested issues in this setting relates to Gamble's residual capacity to "light work" with limitations. The ALJ also found that Gamble could perform her past relevant job as a nurse in a doctor's office as it is generally performed. Gamble argues that the ALJ's RFC assessment, and by extension the ALJ's ultimate conclusion on the issue of disability, are not supported by substantial evidence.

The claimant's RFC is defined as "the most a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R. § 416.945. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. 20 C.F.R. § 416.945. An RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 147 (3d Cir. 2007).

In March 2014, consultative examiner, Dr. Justine Magurno,

completed a medical source statement of Gamble's physical ability to do work-related activities. (Tr. 211-16). Dr. Magurno opined that Gamble could continuously lift/carry up to ten pounds, sit a total of seven hours, stand for a total of two hours, and walk for a total of one hour. (Tr. 211-12). Gamble could never reach overhead, but could continuously perform all other reaching, fingering, and feeling bilaterally, as well as handling with the left hand. (Tr. 213). She could frequently handle with her right hand, and occasionally push/pull and operate foot controls bilaterally. (Tr. 213). She could occasionally climb stairs and ramps and stoop, but never climb ladders or scaffolds, balance, kneel, crouch, or crawl. (Tr. 214). Gamble could never be around unprotected heights or moving mechanical parts, but she could occasionally operate a motor vehicle and continuously be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme temperature, and vibrations. (Tr. 215).

In February and March 2015, treatment notes of James E. Chlebowski, M.D., stated "I do not think that [Gamble] is capable of full term employment, but is functional." (Tr. 221, 224). Dr. Chlebowski stated that he would support Gamble being on disability unless she

could be retrained for a completely sedentary job. (Tr. 225).

In her decision, the ALJ discussed these opinions and only gave "partial" weight to the opinion of Dr. Magurno and "no" weight to the opinion of Dr. Chlebowski. (Tr. 31). It is the ALJ's exclusive responsibility as the fact-finder to evaluate medical opinions, including opinions from a treating physician, state agency consultants, and medical examiners, and decide whether they are supported by and consistent with the rest of the record. 20 C.F.R. § 416.927(c),(e); *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The ALJ is not required to accept a treating physician's opinion (or any opinion in the record) where the opinion is not supported by clinical evidence, is internally inconsistent, or is not consistent with other evidence of record. 20 C.F.R. §416.927(c)(2). Even though a treating physician's opinion may generally carry greater weight then a non-examining consultant, if "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may chose whom to credit but cannot reject evidence for no reason or for the wrong reason." *See Coleman v. Comm'r of Soc. Sec. Admin.*, 494 Fed. App'x 252, 254 (3d Cir. September 5, 2012) (*quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d

Cir. 2000); *Brown v. Astrue,* 649 F.3d 193, 196 n.2 (3d Cir. 2011)("The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."))

In her written decision, the ALJ provided reasons for giving "partial" weight to the opinion of Dr. Magurno and "no" weight to the opinion of Dr. Chlebowski. (Tr. 31). First, the ALJ gave partial weight to the opinion of one-time consultative examiner, Dr. Magurno, because while Gamble's musculoskeletal impairments limit her, there was no basis for limiting Gamble to the extreme extent found by Dr. Magurno. (Tr. 31). Gamble had some limitation of ranges of motion, but she could stand on her heels and toes, and without assistive devices. (Tr. 207-08). Other than a reduced ability to squat, the examination revealed no abnormality. (Tr. 207-09). The ALJ gave partial weight to Dr. Magurno's opinion that Gamble could only perform sedentary work and accommodated Gamble's squatting limitation by restricting her to occasional postural movements. (Tr. 207, 214).

Also, diagnostic testing shows that Gamble had severe musculoskeletal impairments which were somewhat limiting but as she herself said are "pretty-well controlled" and the medication helps. (Tr.

206, 221-22).

The ALJ did not adopt the opinion of Dr. Chlebowski. (Tr. 31). The conclusion of disability is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. § 416.927(d)(2)-(d)(3). Also, the opinion that Gamble could not work full-time is not supported by the record. (Tr. 31). Under the relevant regulations, a treating physician's opinion is entitled to controlling weight only when it is supported by objective findings and consistent with other evidence of record. 20 C.F.R. § 416.927(c)(2). The record shows that the treatment notes of Dr. Chlebowski and Family Practice Center were generally unremarkable, except for some tenderness, examinations were normal. Gamble had a full range of motion with pain only at extremes. (Tr. 31, 259, 262-64). All of this made Dr. Chlebowski's opinion inconsistent with his own treatment notes, including treatment notes of the orthopedic surgeon, Matthew Eager, M.D. (Tr. 31, 268-69).

In July 2014, Dr. Eager noted that Gamble had some tenderness in her back, she had intact reflexes, and her hips, knee, and ankles had painless range of motion without instability. (Tr. 268). Therefore, the

ALJ could not give controlling weight to the opinion of Dr. Chlebowski.

Finally, the ALJ gave great weight to the opinion of the state agency physician, Leo Potera, M.D., who opined that Gamble could perform the exertional requirements of light work and that Gamble could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl but should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. 68). Agency regulations and Third Circuit case law explain that state agency physicians merit significant consideration in the disability analysis. *See* 20 C.F.R. § 416.927(e)(2)(i) (state agency physicians are "highly qualified" and "experts" in social security disability evaluation.); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d, 356, 361 (under the Commissioner's regulations opinions of non-examining state agency physicians "merit significant consideration" in the RFC assessment); *Talmage v. Astrue*, Civil Action No. 09-1065, 2010 WL 680461, at *8 (W.D. Pa. Feb. 24, 2010) (explaining that state agency physicians are medical experts in disability "whose opinions are entitled to some, if not great weight").

While assessing Gamble's RFC, the ALJ is also required to

consider the claimant's own testimony. Here, the ALJ found that Gamble's complaints of disabling pain and limitations were not entirely credible. (Tr. 30). In accordance with the regulations, the ALJ considered the fact that Gamble was not always compliant with treatment. (Tr. 30). The ALJ cannot find a claimant disabled based solely on subjective complaints of pain. 20 C.F.R. §§ 416.928, .929. An ALJ may consider treatment, other than medications, received for relief of pain or symptoms, and other factors concerning functional limitations. 20 C.F.R. §416.929(c)(3)(i)-(vii). An ALJ is not required to accept a claimant's testimony uncritically. Credibility determinations as to a claimant's testimony regarding her limitations are for the ALJ to make. *Van Horn v. Schneider*, 717 F.2d 871, 873 (3d Cir. 1983). The ALJ's credibility finding is entitled to deference and should not be discarded lightly, given his or her opportunity to observe the individual's demeanor. *Murphy v. Schneider*, 524 F. Supp. 228, 232 (E.D. Pa. 1981). Where and ALJ's credibility findings are supported by substantial evidence, those findings will not be disturbed on appeal. *Hartranft v. Apfel*, 181 F.3d 358, 363 (3d Cir. 1999).

In July 2014, Gamble's orthopedic surgeon, Dr. Eager, noted that

Gamble had not received any recent physical therapy. (Tr. 268) He stated he wished that Gamble would try physical therapy and other interventions such as an updated MRI scan. (Tr. 268). When Gamble returned to Dr. Eager six weeks later, she had not attended physical therapy. (Tr. 270). Gamble's failure to follow her doctor's treatment plan is significant because controlling regulations provide that a claimant must follow prescribed treatment to restore the ability to work, and if a condition is amenable to treatment, it cannot serve as a basis for disability. 20 C.F.R. § 416.930.

Gamble argues that this court must re-weigh the evidence that led the ALJ to conclude that her impairments did not create disabling functional limitations, and reach a different conclusion. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (holding that the court cannot reweigh the evidence but must affirm if the Commissioner's decision is supported by substantial evidence). We find that substantial evidence supports the ALJ's decision that Gamble could perform work at a light exertional level with limitations and the ALJ adequately explained the rationale in accordance with the controlling regulations.

## B. The ALJ properly weighed the medical and non-medical evidence of record.

Gamble next argues that the ALJ failed to adequately evaluate the medical and non-medical evidence. Gamble argues that the ALJ did not consider the mental demands of Gamble's work and her ability to meet them. Gamble stated that the ALJ claimed to have given "great weight" to the opinion of state agency reviewer, Dr. Perch, who noted Gamble's mental impairment was non-severe. The ALJ chose to not acknowledge that Dr. Perch found that Gamble had mild difficulties in maintaining concentration, persistence and pace and noted that Gamble retained "the ability to perform simple tasks." (Tr. 66, 27, 28).

The ALJ acknowledged that the treating doctors diagnosed depressive disorder and anxiety for which medication was prescribed but stated that "records reveal no mental status abnormalities other than a reference to her feeling depressed due to pain." (Tr. 27).

Gamble fails to recognize that she carries the burden of production and proof through step four of the sequential process. Here, the ALJ followed the procedure for determining Gamble's ability to perform past relevant work as outlined in Social Security Ruling 82-62, which provides that the ALJ's decision should contain the following findings of

fact:  (1)  the claimant's residual functional capacity; (2) the physical and mental demands of the past relevant work; and (3) whether the claimant's residual functional capacity will permit the claimant to return to her past relevant work.  Soc. Sec. Ruling 82-62, 1982 WL 31386.  In this case, the ALJ made a finding of fact as to Gamble's residual functional capacity (Tr. 28-29).  The ALJ also made a finding of fact as to the physical and mental demands of Gamble's past relevant work as an office nurse.  (Tr. 32).  Consistent with the testimony of the VE, the ALJ found that comparing Gamble's residual functional capacity with the physical and mental demands of this work, Gamble is able to perform the office nurse job according to the DOT, but not as actually performed by Gamble.  The ALJ's decision was based on all the findings, which were based on substantial evidence. We find that the ALJ properly assessed Gamble and that she is able to perform her past relevant work in accordance with  the Commissioner's regulations.  20 C.F.R. §§ 416.920(a)(4)iv), .920(f); Soc. Sec. Ruling 82-62, 1982 WL 31386, at *4.

Gamble did not meet the burden of proof and therefore the ALJ properly concluded that she was not disabled.  The ALJ was not

required to evaluate this case beyond step four of the sequential evaluation process. *See* 20 C.F.R. § 416.920 (if a decision can be reached at any step in the sequential process, further evaluation is unnecessary). In this case, substantial evidence supports the Commissioner's decision.

## IV.    *Recommendation*

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that Gamble's request for the award of benefits be **DENIED**. We also recommend that remand for a new administrative hearing would not be appropriate in this case.

*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  September 19, 2017

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTINE A. GAMBLE,      :
                                 :
           Plaintiff,     :    No. 3:16-cv-01443
                                 :
     v.                :    (Nealon, J.)
                                 :    (Saporito, M.J.)
NANCY BERRYHILL,[6]    :
Acting Commissioner of    :
Social Security,         :
                                 :
         Defendant.     :

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered

the foregoing Report and Recommendation dated September 19, 2017.

Any party may obtain a review of the Report and Recommendation

pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a
> motion or matter described in 28 U.S.C. § 636(b)(1)(B)
> or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy
> thereof. Such party shall file with the clerk of court,

---

[6] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42
U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is
automatically substituted as the named defendant in place of the
former Commissioner of Social Security.

and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.


*s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: September 19, 2017